Please call the next case. 113-297, Filipo Vado v. City of Chicago Good morning to the justices and to my opponents who I'm sorry I've not met before so I don't know the name. I'm Joseph J. Spingol. I represent the appellate in this matter and I have brought this matter before you seeking a reversal of the decision of the Illinois Workers' Compensation Commission where I made an effort and I believe I have proved that my client was entitled to a permanent total disability. In short recitation, the facts are that my client had a series of injuries, one that involved his toe, one that involved his shoulder, each of which led to surgeries and from each of those he was eventually returned to work. Those are not the subject matter of the appeal that's before you today. However, they are a part of the record in this case as all three cases were tried together. We are here on a case where my client had a subsequent injury after returning to work to his lower back for which there was ensuing medical treatment up to the time of trial. We could spend a lot of time here today and what this case is all about is inferences, reasonable inferences and unreasonable inferences. However, I think we can cut through that to a large degree if we only look at two things. One, the City of Chicago, the respondent in this case in the appellee here today, stipulated at the time of trial that my client, Mr. Lovato, was totally disabled on the day in which he testified. The commission in its findings concluded, notwithstanding how they got to an award, concluded, the petitioner has sustained a substantial physical disability as a result of his work injuries. This treating physician diagnosed persistent low back derangement, lumbar spine MRIs reveal multilevel disc bulges. The commission notes that petitioner uses a cane in accordance with recommendations by Dr. Perns and Dr. Slack. Also, petitioner has permanent restrictions which prevent him from returning to his employment. If you take just that one fact and that one explanation, finding, conclusion, whatever you want to call it, you've got to then move to what's the award. And those two tell you the award at that point has to be either a wage differential or a permanent total disability. So the only next issue to really address is, is Mr. Lovato employable after that? And the FCE said he was, right? Pardon me? And the FCE said he was able to perform at a sedentary physical demand, correct? Your question was, was he employable, and that's different than does he have physical capacity. I have no problem agreeing with the Dr. Slack and the physical capacity. Well, the commission relied on the FCE. He said he has the physical capacity to do sedentary employment. Did the commission rely on the FCE? Well, the commission made this statement, but then we get into the reasonable inferences that they got into where the commission said this doctor made a mistake when he relied on the FCE. The FCE wasn't totally conclusive. They didn't use that word. So this doctor didn't know what he was doing, and he relied on the FCE and didn't do anything more than that. And that was passed on to the next guy, and then there's the inference that the next doctor started accumulating these mistakes, and then it was passed on to the voc rehab person. And the negative inferences that I've said are not reasonable inferences are that first, Dr. Slack didn't know what he was doing. He knew this guy for 18 months. He knew the results of his FCE, and that that was passed on. I do want to point out something that I think is very important, and that's why I say the first two cases are part of the record, even though it's not here. Those are not the issue here today. There was a prior functional capacity evaluation in 2005 when my client was returned to work from the toe injury and the shoulder injury. And he didn't pass that functional capacity evaluation. Oh, there was some varying degree of effort in there, and maybe a little question. However, the person who tested him on the functional capacity evaluation in 2005 said he cannot return to work at medium work. Notwithstanding that, his doctors did return him to work. So if you look at the record totally, if he can't pass a functional capacity evaluation for medium work in 2005, how would you expect him to pass a functional capacity evaluation in 2008 when you have a subsequent serious injury? Now, the other thing that's wrong with it is that it presupposes the commission found any credence in the original functional capacity evaluation. I'm not sure that they looked at that fact. I don't see where the two were taken. I'm not sure they didn't. I mean, where's the evidence that they didn't look at or that they didn't know about? Well, if you allow me, I concluded from the end result. Well, no, I understand that. But I think what the base of my question is, is you have a functional capacity evaluation that says that he's capable to perform at a sedentary physical demand. And the commission rejects Schiml and Blumenthal because they don't seem to find any symptom magnification that the functional evaluator found. And therefore, the commission rejects them. They reject their opinions. So you're left only with the FCE report. That's the only evidence they had left after they rejected the two doctors. Okay. And then they conclude Petitioner has permanent restrictions which prevent him from returning to his employment. No question about it. Yeah. Now the question is where's the evidence that he had a diminution in earning capacity? There is no evidence. And whose burden was that? Well, first of all, you start out with, if nothing else, and my opponent argues that he's capable of sedentary employment. And I would agree that physically he may be able to do that. I'm not suggesting, Mr. Spingol, that you don't get caught in a catch-22 here. You go in asking for permanent total. Yeah. The commission, and you don't introduce any evidence of diminution in earning power, because you say it can't work at all. The commission turns around and says, yes, it can. And now you have no evidence in the record of diminution of earning power. So you can't get a wage differential. The only thing you're left with is permanent partial. And that's what they gave you, 35 percent. And I realize it's a very, very strange position to be in. If I understand your question correctly, the statement from the decision says he can't work. He can't work at his present job. That's correct. Right. Present job. So he's got to take another job. But then the way you're reciting it, you're saying the commission says, but he can work. Right. Okay. I don't disagree with that. I don't disagree with that. The question now becomes, he can work at what? No doubt about it. The problem that you're in is because your theory of the case was he couldn't work at all. You never bothered, you never introduced, nor would you, nor would I, introduce evidence that he had a reduced earning ability, and therefore he's entitled to a wage differential, which is the preferred method if there's not to be a permanent total. And so the commission doesn't have any evidence as to what his diminution of earning power is. And based on that, they can't give you a wage differential. They don't know what wage to compare it to. They did have the evidence. What did they have? What was that guy's name? Citi had a job, what did they call it, survey, labor market survey, done by this one witness they brought in. He identified these various jobs that he could do. Patrick Conway. Conway. Thank you. And Conway not only testified to what those jobs are and what he may or may not be well, he didn't say what he's qualified for. He just said these jobs are or will be available. And he quoted the numbers that went with them, the dollar amounts. I even set them forth in my brief. Eight and $20 an hour. So that while I didn't elicit that evidence, the respondent elicited that evidence, which allows the trier of fact to determine are we dealing with permanent total here or are we dealing with wage differential. And as I understand Gallianetti, both of those have to be considered before you can turn to a specific support. You're correct. Does that answer your question? Well, it kind of does, but the question is which were they supposed to pick, eight or 20? I'm sorry. Conway said there were some jobs that the guy could do, and the salaries ranged anywhere from $8 an hour to $20 an hour. Which were they supposed to pick, eight or 20? I think they're supposed to pick the average of the two. I think that's what 8D1 says. Why would they have to pick the average of the two? Don't they actually have evidence as to what the diminution is? I think that's what 8D1 says. 8D1 says the average amount. Of the reduction. It's the reduction. The amount earned or the amount, is it the average amount capable of earning? It's capable of being earned. It said what he's capable of being earned. I don't know about any average amounts. No. But the question really before us, if we can go back to where I started today, by saying you have a stipulation sheet that says that Mr. Lovato is disabled at the time of trial. You have this recitation from the commission saying it prevents him from returning to his employment. Now the only question, and I don't disagree that he was found to be able to do sedentary employment from a physical standpoint. We still got to get to the question, is he capable of obtaining such employment? And in that regard, we offered the evidence of Steve Blumenthal who says it would not be worthwhile to do voc rehab with him and that he would not obtain a job in the competitive labor market. Well, he only has an eighth grade education or somewhere in the high school. I mean, we can start from there. He's over 60 years old. So that leads to Mr. Blumenthal's opinion, which, by the way, is not challenged in the evidence. What we have from Mr. Conway is there's no statement that says Mr. Lovato can obtain the job. It only says that there are jobs that are available that are sedentary. Doesn't that put him to the proofs of a job search? I'm sorry, what? Doesn't that put him to the proof of an unsuccessful job search in order to develop odd lot status? He's not a physical permanent total. There's no question about that. He'd be an odd lot. And in order to establish odd lot, he's got to establish or at least he's got to come forward with some type of an unsuccessful job search. Once you have the evidence that he's capable of working in the sedentary capacity, now he's got to come back and say, yeah, I look for a job, but I couldn't find it. Here's my search. And now the burden would then shift to the city to identify a job he could hold. Well, yes and no, Your Honor. Under Illinois-Iowa Blacktop, there are three ways with which to prove your permanent total disability. One is met through medical evidence. We don't have that. You don't have that. I don't have that. Two, an unsuccessful job search. I'm not trying to prove it based on that one. However, Mr. Lovato did do a job search. And there was, oh, I think he said he did about 200 places he contacted, I think somewhere in there. The commission didn't think much of him applying for jobs at places that didn't have openings. I know, but you have to understand the city of Chicago holds the check over their head. It says go do that. But there is the third one, and that's the one I rely on, and that is expert testimony. And in this case, we have expert testimony from Stephen Blumenthal that going out and trying to do a job search would not be fruitful, and vocational rehabilitation for this man at his age, with this condition, his education, his background, would not prove to be successful. And in that regard, I think I have proven all that I need to prove. And I'm trying to think of any other cases that refer to expert testimony. But Conway testified that he located 15 prospective employers which had positions appropriate for the claimant. And in those positions, he could earn between $8 and $20 an hour was Conway's testimony. Well, again, we could go to Craig's list today, and I could print you out a list of people that have jobs available. No doubt about it. It doesn't mean that you or I or Mr. Lovato or anyone else can get those jobs. And we're back to the same thing I've been harping at all morning. There's no right answer to these things. That's true. There are two possible answers, both of which have evidence in the record that would support them, and the Commission chooses one. Now the question becomes, what are we to do about this? With the deferential standard, we've got to apply to these cases. Well, I do disagree that Mr. Conway's evidence is evidence that Mr. Lovato can obtain any of those jobs. Because just saying a job is available in the market doesn't mean that he would be hired. And there's the part that's missing from the respondent's case. And with that, I think I'll conclude. Thank you, Counsel. Good morning. Stephen Collins for the City of Chicago. May it please the Court. The F.C.E. found that Mr. Lovato did not give a full effort, and it doubted the reliability of his subjective claims of his capabilities. The opinions of Dr. Schimel and Mr. – I'm sorry – and Mr. Blumenthal did not acknowledge these issues with Mr. Lovato's performance during the F.C.E. And for these reasons, their opinions were not credible. And therefore, Mr. Lovato did not satisfy his burden of proving that he fell into the odd lot status. With respect to the wage deferential issue, Mr. Lovato has waived this claim by failing to show an impairment of wages. He did not show what he would have been earning had he still been working for the city. And he did not show what he could otherwise – what he would be earning after his injury. And on top of that, when he was before the commission, he did not ask for a wage deferential award. So that claim has been doubly waived. And unless the Court has any questions, for these reasons, the judgment is yours. I have a problem with this. When you deal with a claimant who is asking for permanent total, why would a claimant who is asking for permanent total ever introduce evidence of wage deferential? It's unclear to me, Your Honor. It makes no sense. Right. The guy says, I'm permanent total. That's it. You've got to pay me for the rest of my life. So now comes the question, if the commission denies permanent total, can you – how do you say he waives wage deferential? And it's problematic to me because you're catching these claimants in a catch-22. Well, respectfully, Your Honor, I disagree on that point. I think that it's possible for a claimant to make an argument in the alternative. No doubt. Lead with a permanent total and then in the alternative for a wage deferential. It appears, however, that Mr. Lovato put all of his eggs in one basket in this case and went strictly for the permanent and total disability claim. And so for that reason, he's waived. And, you know, any person that's going after a permanent total that introduces evidence of wage differential is doing your job for you because he's introducing evidence that undercuts his own case. And that's – you know, it's one thing to plead the alternative, but that's kind of like, you know, the criminal defendant that said, I didn't do it, but if I did, it was self-defense. I mean, you know, you don't introduce something that undercuts your own case. And wage differential would undercut his case. I'm sorry. Go on. Doesn't the trier effect in this case of the commission have an obligation to consider all the evidence in the case regardless of who presented it? It does, yes. But it is, of course, a claimant. And you did introduce evidence of $8 to $20 an hour. So the commission had the evidence they needed to determine wage differential. Two points. I mean, why can't they consider that evidence even though it wasn't? Does it have to be produced by – otherwise he waives it if he doesn't put the evidence in himself? It is, Your Honor, the claimant's burden to present evidence to support the wage differential claim. And with respect to Mr. Conaway's – He doesn't have to if you put it in for him. Well, not only did Mr. Lovato not put the evidence in, but he attacked it. He attacked the validity of that survey in the commission. And so in no way did he rely on it to support the wage differential. I mean, you're not saying – there's no place in the record where Mr. Lovato's counsel said we waive wage differential, right? I mean – He didn't say it explicitly. It was a silent waiver. It was a waiver by virtue of failing to present evidence. I mean, that's what you're arguing. What you're saying is, when I think of Justice Stewart, our question is, do you have to plead it? You do have to plead it before the commission. Yes, Your Honor. And he did not do that. It wasn't until after he submitted his prayer for relief before the commission that he attempted to supplement his claim with the wage differential. No, the commission had before it what his average weekly wage was. I'm sorry, Your Honor? The commission had before it what his average weekly wage was. It was $1,144.35. The arbitrator had found it based upon an annual income of $59,506.20, and they adopted that portion of the arbitrator's decision. So they know what his current average weekly wage is. Now you get the evidence of he can get another job between $8 and $20 an hour. Now, is he entitled to wage differential based on just that testimony? No, Your Honor. There was evidence in the record of what he was earning at the time of his injury. Right. But that's not sufficient to show an impairment of wages for a wage differential award. He has to show what he would have been earning at the time of the hearing had he still been working for the city. And there is absolutely no evidence of that in the record. For these reasons, the judgment of the circuit court to be affirmed. Thank you. Thank you, counsel. Counsel, you may reply. I see some smiles up there, and I'm kind of smiling, too. Because if your catch-22 is wage differential or permanent total, don't think I haven't turned that over in my mind a number of times. And if you're seeking a permanent total, I don't know when the petitioner's attorney would offer the fallback to a wage differential should your permanent total case fall short. I think what I'm here for, and I don't know that there's a finding that says that permanent total and wage differential are both wage loss cases, which would then be subject to the Gallianetti rulings. And if that came out of the decision here today, I think I'd be happy that I made some new law. Well, I suppose your opponent makes a very, very interesting argument at the end. You've got evidence in this record as to what the man was making when he was hurt. But there is no evidence in the record as to what he was capable of earning at the time of the decision, because that's what the wage differential would have to be based on. And it's not to say that you can't introduce evidence of that even though you're asking for a permanent total. Especially when there's evidence in the record as to what he could earn, 8 and 20, there is something in the record. You're right. But there's nothing to compare it to. Well, yes, there is, Your Honor. The law says we can use the wages at the time of injury or the wages that exist at the time of hearing. Well, so that's back to the original question. We have a range here. We do. We have a wage that was earned at the time of injury. Then the question is, what's the proper point in that range for this individual? Well, I think my fallback in this argument was not a request that you determine a wage differential, but if you determine the wage differential. Go ahead, but I don't think you're correct with your interpretation of 8D1. I've got it here. 8D1 says the comparison has to be between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident. So it has to be, as your proponent suggests, what he was capable of earning at the time of the decision, not what he was earning when he was injured. No, no. I don't think so. I think I understand your argument. You're saying you've got evidence there that from Blumenthal, right? Yes. That with his situation as it exists then, that he's able to earn between that range. Well, no, that's what Conway said. Conway. Blumenthal said don't even bother. Okay. Right. Okay. But we've got that data. Yes. But now my question goes back to the original question. Okay. As far as what point between that range does this gentleman fall on? I mean, how does the commission deal with that evidence and come up with a point to make the comparison? There's never been a question. We've got his wage, what he made at the date of injury. That's an easy answer. But what do we do about what he's capable of earning? And we've just got a range. It's my position in that regard that it is not for this court to do the mathematics on that. I ask that if you take that position and say that there is a wage differential here, then I ask you to remand it to the commission for them to make that determination, and I think that's the proper way. So you're saying that range is sufficient to award a wage differential? Well, no. We may put on some other evidence, and we may be able to deal with that. Well, we know that the highest point of that range, $20 an hour, a $2,000 wage, $2,000 an hour work week is $40,000, and we know he's making more than that. He was making more than that on the day of his injury. As much as I would not like to see this case continue and have to go back to the commission. It is a fallback position. I would like to add one other thing, if I might, in this regard. This is the respondent's brief with respect to the Conway evidence, whatever it is. This is the most the respondent can say. Although some of the job descriptions suggest Lovato might not be qualified because he lacks a high school diploma or computer skills, he appears to have been able, qualified for others. He appears to have been qualified for others. That is as far as their evidence goes. Appears to be. That is well short of proof. I'll end with that. Thank you. Thank you, counsel. This matter will be taken under advisement. Written disposition shall issue.